CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

2017 JUN 30  PM 4: 08

DEPUTY CLERK

| | | |
|---|---|---|
| DAVID HAROLD GREER, JR., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:14-CV-198 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner DAVID HAROLD GREER, JR. For the reasons set forth below, it is the

opinion of the undersigned United States Magistrate Judge that petitioner's federal application for

habeas corpus relief should be DENIED.

I.
FACTUAL[1] AND PROCEDURAL HISTORY

[Petitioner] was the driver of a Chevrolet Impala, and was stopped for speeding by a
Texas Department of Public Safety trooper on Interstate 40, in Potter County.
[Petitioner] presented a Washington state driver's license and a two-way rental contract
for the vehicle in his name. Accompanying him were Eric Harris [in the front passenger
seat] and Timothy Freeman [in the back seat]. [Petitioner] identified Harris as his

---

[1] The factual history is taken directly from the opinion on direct appeal where the appellate court was considering, *inter alia*, the issue of whether the trial court erred in denying petitioner's motion to suppress. *Greer v. State*, 2012 WL 375427 (Tex.App.– Amarillo 2013, pet. ref'd).

cousin.  The trooper expressed an intention to issue [petitioner] a warning ticket.

The trooper spoke with [petitioner] and Harris separately.  He detected inconsistencies in their responses to his questions, and found some of the facts surrounding their trip to be suspicious.  The trooper requested a computer information check on [petitioner] as well as on Harris and Freeman.  The return of [petitioner]'s criminal history indicated several prior arrests.  [Petitioner] explained to the trooper the report was not his criminal history but that of another cousin with the same name and date of birth.  Harris indicated to the trooper he and [petitioner] were not related.  [Petitioner] accounted for this inconsistency between his story and Harris's with the explanation that he sometimes referred to others as "cousin."

Before he had issued the planned warning ticket, the trooper requested permission to search the trunk of [petitioner]'s vehicle.  [Petitioner] agreed.  While retrieving the key fob to open the trunk, the trooper smelled ether inside the vehicle and noticed in "plain view"[2] on the passenger side floorboard a bottle of what he believed was PCP.  The trooper arrested [petitioner] and his passengers.  Two additional bottles of PCP were discovered through later searches of the vehicle.

On April 30, 2009, in the 181st Judicial District Court of Potter County, Texas, petitioner was indicted for the first degree felony offense of possession with intent to deliver a controlled substance (PCP, in an amount of 400 grams or more).  Petitioner filed a pretrial motion to suppress the PCP evidence arguing the trooper did not have reasonable suspicion to detain petitioner at the time he requested consent to search the vehicle, or probable cause to search the vehicle.  After an evidentiary hearing during which only the trooper testified, the trial court denied the motion.

On November 9, 2010, a jury found petitioner guilty of the charged offense.  Petitioner testified at the punishment phase of the trial, testifying he was not involved in any plan with either Harris or Freeman to purchase narcotics in California, that he did not ever smell ether in the car, and that he was not aware of any contraband in the car until after it was found during the

---

[2]The trooper's trial testimony before the jury indicated the top of a bottle was visible but the content of the bottles was not in plain view as the bottle was inside a plastic shopping bag.

traffic stop. Tr. 122-23. The jury assessed punishment at confinement in TDCJ-CID for 99 years and a fine of $250,000. *See State v. Greer*, No. 59,244.

Petitioner, through appointed counsel, filed a direct appeal of his conviction and sentence arguing: (1) the trial court erred by denying petitioner's motion to suppress because the trooper did not have reasonable suspicion to request consent; and (2) trial counsel was ineffective for failing to properly investigate the case because he failed to speak to Eric Harris, the co-defendant front seat passenger under whose legs the juice bottles containing PCP were found. On January 31, 2013, the state intermediate appellate court affirmed petitioner's conviction. *Greer v. State*, No. 07-10-00500-CR. On June 12, 2013, the Texas Court of Criminal Appeals refused petitioner's pro se petition for discretionary review of the intermediate appellate court's determination. *Greer v. State*, PD-0188-13.

On April 8, 2014, petitioner sought collateral review of his Potter County conviction by filing a state habeas corpus petition asserting the same grounds raised herein. On July 9, 2014, the Texas Court of Criminal Appeals denied petitioner's state habeas application without written order. *In re Greer*, No. 81,422-01.

On September 10, 2014, petitioner deposited the instant federal habeas petition in the prison mail system, such application being received by this Court and file stamped on September 15, 2014. On September 16, 2015, the United States District Judge denied a motion filed by respondent to dismiss petitioner's habeas application as successive. On December 3, 2015, respondent filed an answer arguing petitioner is not entitled to federal habeas relief because he has not overcome the AEDPA's relitigation bar and because his claims lack merit. Petitioner did not file a reply.

II.
## PETITIONER'S ALLEGATIONS

Petitioner contends his conviction was in violation of the Constitution and laws of the

United States for the following reasons:

1.     Petitioner was denied effective assistance of counsel at trial because counsel failed:

    a.     to object to an inflammatory remark made by the prosecution during its opening statement;

    b.     to make an opening statement on petitioner's behalf;

    c.     to object to admission of co-defendant Freeman's inconsistent out-of-court statements through another witness;

    d.     to request the trial court instruct the jury that co-defendant Freeman's statements could be considered only for purpose of impeachment; and

    e.     to request the trial court include a jury instruction under Texas Code of Criminal Procedure article 38.23 allowing the jury to disregard the PCP evidence as the fruits of an illegal search in the event they found it was illegally obtained.

2.     Petitioner was denied effective assistance of counsel on appeal because appellate counsel failed to raise the above claims of ineffective assistance of trial counsel on direct appeal.

III.
## STANDARD OF REVIEW[3]

The state habeas court considered petitioner's claims raised herein and denied relief. In

order to grant federal habeas corpus relief, a petitioner must demonstrate and this Court must find

the state court determination of the facts was unreasonable in light of the evidence presented in

---

[3]In her answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standard of review, as well as the application of presumptions and burdens of proof, in federal habeas corpus proceedings. *Respondent's Answer* at 4-9. This summary is set forth in lieu of replicating respondent's 5-pages of fully briefed law regarding the standard of review this Court must follow.

the state court proceeding. *See* 28 U.S.C. § 2254(d)(2). Where applicable, the state court's findings of fact "are 'presumed to be correct' unless the habeas petitioner rebuts the presumption through 'clear and convincing evidence.'" *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006), *quoting* 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact, but to the implicit findings of the state court as well. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted). In determining whether the state court decision was unreasonable, this Court must be careful not to substitute its judgment for that of the state court. In other words, a determination that the state court reached the wrong result or that the state court decision was incorrect, is insufficient. Denial of relief based on a factual determination will not be overturned unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

Alternatively, in order to grant relief, a petitioner must demonstrate and this Court must find the state court decision resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d)(1). The state court's application of the law must be "objectively unreasonable" not "merely erroneous" or "incorrect." *Cobb v. Thaler*, 682 F.3d 364 (5th Cir. 2012). The AEDPA standard is met only in cases where there is no possibility a fair minded jurist could disagree that the state court's decision conflicts with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011).

IV.
### EFFECTIVENESS OF COUNSEL[4]

Petitioner raises numerous claims of ineffective assistance of trial and appellate counsel. Ineffective assistance of counsel claims are governed by the standard enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Under the two-pronged *Strickland* standard, a petitioner must show counsel's performance was both deficient and prejudicial. *Id.* at 687, 104 S.Ct. at 2064. If the attorney made errors so serious the attorney was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution, the performance was deficient. *Id.* A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Strategic choices made after a thorough investigation of both the law and facts are "virtually unchallengeable." *Id.* at 690-91, 104 S. Ct. at 2066. This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011).

Even if deficient performance is shown, a petitioner must also show counsel's deficient performance prejudiced the defense. To prove prejudice a petitioner must show "there is a reasonable probability that, but for counsel's errors, the ultimate result of the proceeding would have been different" and that "counsel's deficient performance rendered the trial fundamentally

---

[4]In her answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standard of review, as well as the application of presumptions and burdens of proof, for claims of ineffective assistance of counsel. *Respondent's Answer* at 9-12, 18-19. This summary is set forth in lieu of replicating respondent's numerous pages of fully briefed law regarding the standard of review this Court must follow in determining petitioner's claims.

unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir. 1993). If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

The *Strickland* standard also applies to claims of appellate counsel error. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). It is difficult to show defense counsel's decision not to pursue a particular claim on appeal falls outside the "wide range of professionally competent assistance" in order to demonstrate deficient performance. *See Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). Prejudice in the context of appellate counsel error requires the petitioner to demonstrate a reasonable probability that he would have prevailed on appeal. *Robbins*, 528 U.S. at 285-86.

### A. Prosecutor's Closing Remark in Opening Statement

After the Indictment against petitioner was read, the State prosecutor made a brief opening statement to the jury identifying the four (4) witnesses he intended to call at trial and what he anticipated their testimony would be. Tr. 134-36. At the close of his statement, the prosecutor stated:

> With that, when I finish, ladies and gentlemen, I think the road will lead you to the only logical conclusion, the guilt of the Defendant. Thank you.

Petitioner contends this final statement was a "misleading and inflamed remark," that trial counsel

was deficient for failing to object to the prosecutor's remark, and that petitioner was prejudiced by trial counsel's failure to object to the statement.

First, petitioner does not state the objection he contends trial counsel failed to lodge. Second, there is nothing inflammatory about the State prosecutor's remark. To the extent the prosecutor's closing sentence was more in the nature of a closing argument than an outline of the evidence to be offered and there was a potential, albeit minor, objection which could have been made, the sentence was not such an inflammatory or prejudicial statement that it would have affected the outcome of the trial. To the extent petitioner contends the prosecutor exceeded what is allowed in an opening statement or gave his personal opinion, petitioner cannot show the outcome of the trial would have been different if counsel had objected to the statement. If an objection had been made and overruled, it would have been harmless error if it was error at all. Petitioner's claim of ineffective assistance of counsel for failure to object to the State prosecutor's final remark in his opening statement is without merit and must be denied.

### B. Defendant's Deferred Opening Statement

During the voir dire of the prospective jurors, the State advised that petitioner, "along with two other gentlemen," were stopped on I-40 and PCP was found in the vehicle. Tr. 22. The State explained that petitioner's mere presence alone was not sufficient to convict him of possessing the PCP, and that he had to exercise actual care, custody and control over the item to possess it. Tr. 35. The State also explained to the potential jurors that the key issue in the case was going to be whether petitioner "possessed with intent to deliver." Tr. 42. Defense counsel's voir dire of the jury panel also centered on whether petitioner had actual care, custody and control over the controlled substances found in the car. After the State prosecutor made a brief opening statement,

the trial court asked defense counsel, "Mr. Williamson, you want to take your time now?"  Tr. 136.
Defense counsel advised the trial court that he would "defer" his opening statement.  After the State
rested its case, calling only four (4) witnesses, defense counsel did not give an opening statement.
Instead, counsel announced the defense rested without calling any witnesses.  After no objections
were made to the trial court's charge to the jury, the State prosecutor and defense counsel gave
closing arguments.  During his closing statement, defense counsel argued the State had not proven
defendant was aware of the controlled substances in the car or was the individual in possession of
the controlled substances, and that the evidence pointed to co-defendant Harris as the individual
possessing the drugs.

Petitioner contends trial counsel was deficient for failing to make an opening statement prior
to the presentation of the State's evidence.  Petitioner asserts it was "impossible for trial counsel to
give an opening statement at a later time" and that by failing to make an opening statement, trial
counsel effectively "abandoned Petitioner's defense during an adverse and critical time," especially
considering the prosecutor's statement in his opening that based on the evidence the State would
present, the only logical conclusion was petitioner's guilt.  Petitioner argues defense counsel's
failure to give an opening statement "gave [the jury] no viable defense" to consider, and concludes
that but for defense counsel's failure to give an opening statement, the outcome of his trial would
have been different.

"The purpose of an opening statement is to tell the jury what the case is about and to outline
the proof."  *United States v. Breedlove*, 576 F.2d 57, 60 (5th Cir. 1978).  During voir dire, both the
State and defense counsel had made it clear to the jury what the case was about and that it hinged on
whether petitioner was in possession of the controlled substances found in the car.  The State gave

an extremely brief and basic opening statement as to the evidence of the case and what they expected the testimony to be. Petitioner has not identified what comments he believes defense counsel should have made in an opening statement, nor has he demonstrated how any such comments would have been supported by the testimony and evidence. In fact, since the defense called no witnesses[5] and offered no evidence, there was no opening statement to be made. Representations in an opening statement which were not later substantiated by the testimony and evidence would have potentially hindered the defense and possibly alienated the jury. Petitioner has not identified any legitimate opening statement defense counsel could have made which would have aided petitioner's defense.

Further, as noted by respondent in her answer and the case law cited therein, the decision whether to make an opening statement is a matter of trial strategy and, as a tactical decision or matter of professional judgment, it is not objectively unreasonable in and of itself not to make one. Counsel's defense strategy was based on the State's inability to prove, beyond a reasonable doubt, that petitioner was aware of or had possession of the controlled substance, and to instead blame petitioner's co-defendants. To present this defense, trial counsel could have made the strategic decision to waive opening statement in order to more effectively challenge the State's evidence. Petitioner has not shown defense counsel's decision to waive opening statement was not a strategic decision. Petitioner has not demonstrated defense counsel's failure to give an opening statement, a commonly adopted strategy, was in any way deficient. Nor has petitioner demonstrated he was adversely affected or otherwise prejudiced by counsel's failure to do so, *i.e.*, that the trial would

---

[5]During the punishment phase, petitioner testified he wanted to call witnesses during the trial and wanted to testify in his own behalf. Petitioner did not, however, include this as a ground for relief and he has not identified any intended witnesses, nor did he opine as to why neither he or the other purported witnesses did not testify at trial. Tr. 112-13.

have ended differently but for counsel's decision to waive an opening statement. This claim of ineffective assistance of counsel is without merit and should be denied.

### C. Co-Defendant's Out-of-Court Statements

Prior to the State's opening statement, the prosecutor advised the trial court that the State would be calling Department of Public Safety Detective Michael Webb as a witness to introduce an edited recording the agent made of an interview with petitioner's co-defendant, Timothy Freeman, as well as an edited transcript of the interview.[6] Tr. 131-32. In his opening statement, the prosecutor stated he was going to call Freeman as a witness and expected him to testify about his relationship with petitioner, the purpose of their trip, and "what was going on." Tr. 135-36. The prosecutor also stated he would call Detective Webb as a witness to testify as to the interviews he had with petitioner and co-defendant Freeman during his investigation of the offense.

Co-defendant Freeman testified petitioner did not tell him the purpose of the trip to California or tell him they would be purchasing PCP. Freeman also testified he did not know if petitioner purchased anything while they were in California. Tr. 10. Freeman, who was in the back seat instead of the front passenger seat where the majority of the PCP was found, acknowledged he was aware there was PCP in the vehicle when they were stopped but could not remember at what point during the trip he became aware of the drugs in the vehicle. Tr. 11. Freeman testified he did not know how the PCP got in the vehicle, and did not know who it belonged to. After Freeman stated he was testifying truthfully, the prosecutor asked Freeman if he had "made different

---

[6]Co-defendant Freeman was tried and acquitted before the start of petitioner's trial. Outside the presence of the jury, the prosecutor explained the trial judge in Freeman's trial had held portions of the original recording and transcript inadmissible. Therefore, the State would only introduce the edited versions for publication to the jury, but would also submit the original recording and transcript to the trial court for appellate record purposes.

statements" in the past, to which Freeman volunteered, "Yeah, I lied to the police." Tr. 11-12. The

prosecutor asked Freeman if he remembered being interviewed by Detective Webb with the DPS on

February 11, 2009, to which Freeman responded, "Yeah, I remember lying to him." Tr. 13-14.

Freeman testified he did not recall specifically what he said during the interview, explaining that he

"told so many lies" it was difficult to remember what he did say. Tr. 13. Freeman testified that if

he stated during the interview that petitioner had come to him "about going out to California and

buying some PCP," that the statement was false. Tr. 14. Freeman claimed he did not specifically

remember making various statements during the interview but that if he had, he had made them all

up and lied. Tr. 15. Freeman reiterated he did not remember telling Webb that he and petitioner

had a plan to purchase PCP for sale, but that he "probably did" tell Webb that they were going to

ship PCP back rather than carry it in the vehicle. Tr. 19. Freeman acknowledged he told Webb

petitioner drove the entire way back from California, and that the destination of the PCP was

Oklahoma City. Tr. 20. Freeman asserted he did not remember inculpating the third passenger,

Harris, in the plan to sell PCP in Oklahoma City. In response to continued questioning on direct

examination, Freeman stated:

> A.    Man, like I said – I really can't remember. I need some transcripts or something,
>        you know, I mean, like – this is February 2009.
>
> Q.    All right. Would it help you if I showed you a transcript of your statement to the
>        Agent Webb?
>
> A.    I mean, you're reading it right there. If you've got it on transcript, obviously I
>        said it, but I still don't remember saying it. Like I said, I told so many lies to the
>        cops, I was trying to make myself look innocent.

Tr. 21. The State prosecutor continued to query Freeman as to specific statements he made to Webb

inculpating all three of the vehicle's passengers to which he replied, "I don't remember saying that."

Tr. 21-22. Freeman acknowledged telling the prosecutor on the morning of the trial that "it would be a bad idea for [the State] to call [him] as a witness" and that he was going to intentionally try to hurt the State's case. Tr. 22.

On cross-examination, defense counsel confirmed the statements Freeman had made during the interview with Webb which inculpated petitioner were lies to try to make himself "look good." Tr. 23. Freeman explained the high cost of operating his trucking company "drove [him] into being a criminal again." Tr. 24. Freeman denied any recollection of a phone call to his girlfriend during which he insinuated the drugs belonged to petitioner and Harris. On re-direct, Freeman stated he was not now testifying that the PCP in the vehicle belonged to him. Tr. 25.

After Freeman was excused, the prosecutor advised the trial court that he intended to offer the edited recording of the interview and edited transcript,[7] to be published to the jury, "for impeachment purposes." Defense counsel objected to the admission of the recordings and the transcripts arguing:

> I'm going to object to that. I – the displaying [of] this conversation, he's already said it was a lie. He said most of it he doesn't remember or he lied about it, and I'll object to the jury seeing this or hearing this, because the person giving the statements already said it wasn't true, and he already gave the reasons for it not being true. And the – Mr. Freeman, that is. And this is a ploy or a – it's to confuse the jury. And also, Mr. Freeman was not subject to cross-examination by anybody during this interview. And again – and he's already said it's a lie. And I'm not clear why they want to get it into evidence to –

Tr. 26-27. In response, the prosecutor stated:

> I don't know that that's a grounds [sic] under the Rules of Evidence. It's a prior statement that was incorrect. That's the reason I'm offering it as a prior inconsistent statement to what he said here in the court which is an exception to the hearsay. Further, Your Honor, many parts he says he doesn't remember, so I can obviously put the officer

---

[7]The full, unredacted versions were offered for appellate purposes only, and not to be published to the jury.

on to testify as to the parts that he [Freeman] didn't remember.

Tr. 27. In response, defense counsel submitted that Freeman was not under oath when he gave the statement to Detective Webb. The trial court, however, ruled:

> I'm going to let him testify. I mean, this guy obviously had his own agenda not that
> – he told us that he was going to do something to destroy the State's case.

*Id.* The trial court confirmed with the prosecutor that the jury could then "make the decision which statement is true." After the trial judge made that ruling, defense counsel then objected to the jury being given a copy of the transcript to read along with the playing of the audio recording. Tr. 28. The prosecutor responded that Freeman's attorney was present during the interview, the purpose of which was to determine whether Freeman was willing to cooperate with law enforcement to further an extended investigation, Tr. 29, and further explained the State would tender, via Detective Webb, the edited recording of the interview and a copy of the transcript of the edited recording. The prosecutor explained it was necessary to provide the jury with a transcript to read along with the recording "[b]ecause of the nature of the recording, and the speaker capabilities that we have, some phraseologies and things of that nature are not exactly entirely legible, if you will, without headphones or whatnot." Defense counsel reiterated his objections to the admission of the audio recording into evidence:

> My objection is, first of all, the – this is to confuse the jury, because he's already said
> that what he told these people, he gave the reasons for telling them lies and he said it
> was a lie. He doesn't remember any of this or it's a lie, one of the two. And he gave the
> Court reasons and the jury reasons for doing that before he told [the prosecutor] that he
> was going to try to hurt his case, I guess.

Tr. 31-32. Defense counsel also argued that in Freeman's criminal trial, the edited audio recording of his interview was admitted as the defendant (Freeman's) own statement, not as a third party's statement admitted to implicate a different defendant as in this case. Tr. 32.

Defense counsel also objected to the admission of a transcript of the recording or providing the jury with a read-along transcription on the grounds that the jury should be able to discern on their own what was said during the interview rather than being told what was said by a transcription, and should hear what Detective Webb heard in the same medium in which he heard it.  Tr. 31-35. Defense counsel further argued the transcriber was unknown, had not been shown to be reliable, and was given discretion to fill in inaudible parts of the recording, and that neither Freeman nor petitioner had ever approved the accuracy of the transcription.  Tr. 31, 34-35.  Defense counsel did identify one specific portion of the transcript he thought was incorrect or improperly transcribed and the trial court redacted the transcription.  Tr. 36-39.  No other discrepancies were identified.  The State also acquiesced to removing the final five (5) pages of the transcript.  Tr. 38-39.  Defense counsel also renewed his objection "under [Rule] 404" that the whole statement was "already said to be a lie by the person that made it."  Tr. 40.

The trial court admitted the edited audio recording of the interview between Freeman and Detective Webb and, due to the difficulties in understanding what Freeman was saying, also allowed the transcript of the edited recording to be provided to the jury "to aid them in their understanding of what is being said."  Tr. 39.

The State then called Detective Webb as a witness.  Webb testified it was not his recollection that Freeman was simply saying things during the interview in an attempt to get out of jail.  Tr. 50.  The edited audio recording of the interview between Webb and Freeman was then played for the jury with the jury utilizing a transcript of the edited recording to read along.  During the interview, Freeman gave incriminating details about petitioner and co-defendant Harris pooling their money and obtaining the PCP in California, about petitioner smoking a PCP-coated cigarette

on the return trip, about petitioner and Harris' intent to distribute the PCP in the Oklahoma City area, and that his understanding was that petitioner and Harris were supposed to ship the PCP back rather than transport it themselves.

Webb testified Freeman had told him the plan was to transport the PCP and then distribute it. Tr. 53. On cross examination, Webb acknowledged Freeman was not under oath during the interview, and that he did not believe Freeman lied about everything during the interview, although he did give some inaccurate information concerning furthering the investigation. Tr. 55. On redirect, Webb acknowledged the majority of the information Freeman provided was about petitioner and Harris, the other occupant of the car. Tr. 58.

Petitioner maintains trial counsel was deficient for failing to object to the admission of the audio recording and transcript of co-defendant Freeman's interview with Detective Webb. Petitioner contends the admission of the audio-recording was tantamount to the admission of a witness's out-of-court statements. Petitioner initially argues defense counsel should have objected to the introduction of the statements "as hearsay under the Confrontation Clause." Petitioner further claims defense counsel's failure to object to the statements resulted in the violation of his right to confront Freeman regarding his prior statements.

Contrary to petitioner's allegation, defense counsel did object and objected at length to the admission of the audio recording and transcript of co-defendant Freeman's interview with Detective Webb. Counsel urged a number of various objections to the admission of the evidence including a hearsay objection and that "Freeman was not subject to cross-examination by anybody during this interview." Tr. 27.

Secondly, there was no violation of the confrontation clause because the witness, co-

defendant Freeman, testified at petitioner's trial and was subject to cross examination. Freeman

testified in large part about the substance of his prior interview with Detective Webb, and defense

counsel had the opportunity to cross-examine him. Tr. 7-25. The recording and the accompanying

transcript were offered as prior statements made by Freeman that were either inconsistent with

Freeman's trial testimony or were offered because Freeman said he did not remember making the

statement. The prosecution, in presenting this evidence, noted the admission of the recording was

being offered as an exception to the recording being hearsay. The issue of whether the recording

was an exception to the hearsay rule was squarely before the trial court and the trial court found the

recording admissible. Petitioner has not shown the trial court would have sustained any other

hearsay objection by defense counsel. Petitioner has not shown defense counsel was deficient for

failing to make a different hearsay objection to the admission of the audio-recording of Freeman's

interview with Webb.

Nor has petitioner demonstrated he was prejudiced by defense counsel's failure to make a

more specific hearsay objection. Even without the testimony of Freeman or Webb, there was

sufficient evidence to find petitioner guilty. Petitioner was charged with possession with intent to

deliver PCP, and the jury was instructed that petitioner could be convicted of the charged offense

even if co-defendants Harris or Freeman possessed the PCP if petitioner was aiding, abetting,

encouraging, or assisting either of them in committing the offense. Petitioner, who held a

Washington state driver's license, rented a mid-size rental car in Oklahoma City, took the car with

co-defendant Freeman, a mere acquaintance and an ex-convict on probation for transporting a

controlled substance through the Texas panhandle, from Oklahoma City to Los Angeles, California,

a 1,300 plus mile trip. After being in California for only a short period, an additional passenger, co-

defendant Harris, joined petitioner and Freeman in traveling from Los Angeles to Oklahoma City. Petitioner was driving and was exercising care, custody and control of the car when stopped by the Texas state trooper. Petitioner advised the trooper that he and Freeman drove from Oklahoma City to Los Angeles for petitioner to pay a minor ticket. The trooper testified there was an extremely strong smell of ether from the PCP in the cabin of the car. PCP was found in clear bottles in a plastic sack in the floorboard of the front passenger seat, and in a piece of luggage in the trunk. The amount of PCP was well over 400 grams, clearly indicating an intent to distribute the substance. This evidence established a number of affirmative links to the contraband and was sufficient for the jury to convict. Petitioner cannot show the outcome of the trial would have been different had counsel asserted additional objections based on hearsay.

Lastly, petitioner appears to allege defense counsel was defective for failing to raise a confrontation-based objection to the admission of co-defendant Freeman's interview recording and transcript. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). Testimonial statements from an unavailable witness may not be introduced at trial without a prior opportunity for cross-examination, irrespective of any exceptions for hearsay.[8] *Woodfox v. Cain*, 609 F.3d 774, 799 (5th Cir. 2010). Testimonial evidence, at a minimum, includes police interrogations. *Crawford*, 124 S.Ct. At 1374. The admission of testimonial statements against a criminal defendant, without an opportunity to cross-examine the individual, is alone sufficient to make out a violation of the Sixth Amendment. *Id.*

Petitioner has not demonstrated he was denied his right to confront witness Freeman.

---

[8] "[T]he Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination." *Crawford*, 124 S.Ct. At 1374.

Freeman appeared and testified during petitioner's trial as to the statements he made during his interview with law enforcement. Petitioner has not demonstrated he was denied his constitutional right to confront this witness merely because an audio recording and transcript of co-defendant Freeman's interview with Detective Webb was admitted. Petitioner has not shown it was objectively unreasonable for counsel to not lodge a more specific confrontation-based objection considering there was no Sixth Amendment confrontation violation under the circumstances presented. Petitioner has not demonstrated counsel was deficient or that petitioner was prejudiced by counsel's failure to lodge a more precise confrontation-based objection.

Petitioner also claims defense counsel was deficient for failing to request a limiting instruction as to the proper scope of the jury's consideration of the recording and transcript of Freeman's statements during his interview with Detective Webb when they were admitted during trial. As noted above, the State argued the recording and the transcript of the interview were offered as prior inconsistent statements made by Freeman for the purpose of impeaching his trial testimony. Petitioner asserts defense counsel should have requested the court instruct the jury that Freeman's prior inconsistent interview statements could be considered only for purposes of determining Freeman's credibility as a witness and could not be considered for any other purpose, including determining petitioner's guilt or innocence.

Under Texas law at the time of petitioner's trial, "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Tex. R. Evid. 105(a) (2010). Limiting instructions are most effective when they are given simultaneously with the related evidence. *Rankin v. State*, 974 S.W.2d 707, 712

(Tex.Crim.App. 1996). Thus, when evidence is admitted for a limited purpose, the trial court must, upon request, provide a midtrial limiting instruction. *Id.* Failing to provide the instruction may improperly result in the jury forming a negative inference about the defendant. *Jackson v. State*, 992 S.W.2d 469, 477 (Tex.Crim.App. 1999). This improper inference, once formed, cannot easily be cured by an instruction in the jury charge. *Id.* If the defendant fails to request a limiting instruction at the introduction of the impeachment evidence, then the defendant does not preserve error and the trial court is not required to provide an instruction; the burden is on the defendant alone to request a limiting instruction. *Walker v. State*, 300 S.W.3d 836, 849 (Tex.App.–Fort Worth 2009, pet. ref'd).

Here, the State offered the edited recording and transcript of the Freeman/Webb interview as a prior inconsistent statement "for impeachment purposes." The trial court admitted the recording and transcript over defense counsel's objections finding that by admitting the evidence, the jury could then "make the decision which statement is true." Trial counsel did not request the jury be given an instruction limiting their consideration of the interview statements at the time they were admitted. Because the evidence was admitted for a limited purpose, it appears, or it is certainly arguable, that petitioner was entitled to a limiting instruction that the jury could only consider Freeman's statements during the interview for the purpose of weighing Freeman's credibility and not for the truth of the interview statements themselves. Defense counsel, however, failed to request such an instruction.

The record does not reflect defense counsel's reasoning for not requesting a limiting instruction as to the jury's consideration of Freeman's statements made during the Freeman/Webb interview. Much of Freeman's trial testimony, however, was actually favorable to petitioner. In fact, Freeman testified the out-of-court statements he made about petitioner during the interview

were false.  Counsel may have felt an instruction to the jury specifying how they were to conceptually consider Freeman's prior interview statements might confuse the jury and distract from the favorable trial testimony and, therefore, decided not to request a limiting instruction.  In certain instances, defense attorneys have justified not requesting a limiting instruction on the strategic decision that juries often do not understand a limiting instruction and might believe counsel is trying to hide something if he requests a limiting instruction.  Similarly, attorneys have explained a decision not to seek a limiting instruction because such a request can call additional attention to admitted evidence.  Nonetheless, since the record before the Court does not provide the basis for defense counsel's failure to request a limiting instruction, the undersigned will proceed to address the claim, but will address the prejudice prong without deciding the deficiency prong.

While an in-court limiting instruction, followed by a limiting instruction in the jury charge, may have been optimal, the failure to request such a limiting instruction did not prejudice petitioner to the degree that there is a reasonable probability the result of petitioner's trial would have been different.  Assuming the trial court would have provided a proper and thorough limiting instruction upon defense counsel's request, such an instruction would have:  (1) directed the jury as to the reason the recording and transcript of the Freeman/Webb interview was being admitted into evidence, *i.e.*, to show Freeman's sworn testimony at trial was contrary to statements he had previously made to law enforcement; (2) permitted the jury to consider Freeman's prior inconsistent statements made during the Freeman/Webb interview in assessing Freeman's credibility as a witness; and (3) restricted the jury from considering Freeman's prior inconsistent statements made during the Freeman/Webb interview as evidence against petitioner on guilt or for any other reason. *Cf. id.* at 849-54 (a limiting instruction is incomplete if it does not properly restrict the jury's use of

impeachment testimony). Texas juries are presumed to follow the trial court's instructions in the manner presented, and a reviewing court will abandon this presumption only if there is evidence showing the jury did not follow the instructions. *Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App. 1996). While an instruction does not entirely foreclose possible misuse of evidence by the jury, it does direct the jury in the proper manner in which it should interpret what could be highly prejudicial and incriminating evidence. The jury, in weighing Freeman's credibility on the stand by considering the fact that he had made prior statements inconsistent with his trial testimony, necessarily considered the substance of his prior interview statements. Texas courts have succinctly characterized that the "theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements." *Del Carmen Hernandez v. State*, 273 S.W.3d 685, 689 (Tex.Crim.App. 2008). Here, the jury, although not instructed to consider Freeman's prior statements only in determining Freeman's credibility, was presented with two statements and asked to determine whether either or neither one was truthful. It was the jury's domain to determine the credibility of the witnesses called during the trial. While the jury certainly found Freeman was less than credible on the stand, such does not dictate the converse, *i.e.*, that the jury found Freeman was credible during the prior interview, or that the jury used the prior inconsistent statements as substantive evidence of petitioner's guilt. Indeed, the prior inconsistent statements were not the only evidence of guilt. Other evidence before the jury, primarily the trooper's testimony that large amounts of PCP were being transported in the interior of the car, that the PCP was emitting a strong, recognizable odor, that petitioner was in control of the vehicle he

had rented, and was driving the vehicle cross-country, under highly questionable circumstances, was sufficient for the jury to convict petitioner of actual possession, or at least possession under the law of parties. Petitioner has not demonstrated defense counsel's failure to request a limiting instruction permeated petitioner's trial with obvious unfairness, nor has petitioner shown there is a reasonable probability that the jury would have reached a different conclusion had the trial court provided a proper and complete limiting instruction on Freeman's prior interview statements. Petitioner has not demonstrated the requisite prejudice to prevail even if defense counsel was deficient in failing to request a limiting instruction.

Moreover, petitioner raised this claim of ineffective assistance of trial counsel during state habeas corpus proceedings. The state court considered this claim and declined to provide any relief. Petitioner has not shown the state court's determination that defense counsel was not deficient for failing to request a limiting instruction with regard to the admission of Freeman's interview statements, or that petitioner was not prejudiced by the failure, was contrary to *Strickland* or an unreasonable application of *Strickland*. Nor has petitioner shown the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, even if the state habeas court was wrong, petitioner has not overcome the AEDPA standards in order to be entitled to federal habeas relief. This claim of ineffective assistance of counsel should be denied.

### D. Jury Instruction Under Article 38.23

Defense counsel filed a pre-trial motion to suppress the seized contraband as the fruit of an unconstitutional search and seizure. After a hearing during which the trooper who effected the traffic stop was the only witness, the trial court overruled the motion to suppress.

During the State's opening statement, the prosecutor stated:

> I intend to present first to you this afternoon Jason Lindley, a trooper with the Department of Public Safety who's going to testify to you, I believe, that on the morning of January 25th, early morning hours, it was a fairly cool morning, about how he stopped the vehicle driven by Mr. Greer. Mr. Greer was a renter of this vehicle.
>
> There were several things about his contact that made the trooper suspicious. Mr. Greer had a Washington driver's license, he claimed to live in Oklahoma City, the nature of the trip, the timing of the trip, just made him suspicious. You're going to find out that he asked for consent to search that vehicle. Mr. Harris, who was sitting at the right front passenger seat and Mr. Freeman, who was in the rear seat. You're going to find that the trooper moved all those individuals out of the vehicle.
>
> Almost immediately when he entered the vehicle he detected a very peculiar odor, an odor that he immediately recognized. An odor that was associated with PCP. He then effected an arrest.

Tr. 137. At trial, Trooper Lindley testified, "I made the determination to go ahead and see if [petitioner] would voluntarily give me consent to search" the trunk and that petitioner gave such consent. Tr. 151, 168. The trooper further testified:

> I went up to the vehicle and asked the other two gentlemen to get out, and they complied. I walked around to the driver's side of the vehicle, reached in to grab the key fob to release the trunk, and as soon as I stuck my head in the vehicle, I smelt a real, real strong odor of ether. And I've had some experience in the past around PCP and knew that PCP was cut with ether. And the smell was so strong in the vehicle that I knew instantly that that's what it was. So I backed out of the vehicle and placed all three subjects under arrest.

Tr. 152. On direct examination, the trooper clarified that when he "poked" his head in the vehicle to get the key fob in order to release the trunk for the consent search, he immediately noticed the extremely strong odor of ether and "knew what was going on" based on the smell. Tr. 153. The trooper testified he had recent experience with a large PCP seizure and was very familiar with the associated odor of ether. Tr. 163. The trooper testified that he looked around for the source of the strong ether odor, looking inside a plastic sack on the passenger side floor board and found an apple

juice bottle containing an amber liquid too dark to be apple juice. *Id.* The trooper explained he immediately backed out of the vehicle and placed the three subjects under arrest. Tr. 153-54. The trooper testified that after he effected the arrest, he conducted an inventory of the vehicle finding an additional juice bottle in the front passenger floorboard, and a hydrogen peroxide bottle in the trunk, and that all three bottles were determined to contain PCP. Tr. 152-53.

On cross-examination, defense counsel questioned Trooper Lindley:

Q.    You asked him if you could search his trunk –

A.    That's correct.

Q.    – at some point? And what did he say?

A.    That's correct. He said I could.

Q.    Okay. So he gave you consent to search the trunk and – as well as the car, I suppose? Since he told you you could search the car you had to get the key fob from inside to –

A.    That's correct.

Q.    And that does automatically give you permission to look inside the car. Right? Or be in the car?

A.    To retrieve the keys, yes, sir.

Tr. 168. The trooper acknowledged he did not notice the odor of ether during the original contact with the occupants of the car. Tr. 172. The trooper again averred he smelled the strong ether odor when he "stuck [his] head inside to pull the key out." Tr. 173.

Petitioner contends the above opening statement and testimony "raised a fact issue at trial regarding [the validity of] Petitioner's consent to search, which resulted [in] the seizure of [the] PCP during [the] traffic stop." Article 38.23(a) provides that "[n]o evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution

or laws of the United States of America, shall be admitted in evidence against the accused" at trial.
Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2015). Defense counsel did not request the trial
court give a jury instruction under article 38.23(a) of the Texas Code of Criminal Procedure.

By this ground, petitioner argues trial counsel was deficient in failing to request an article
38.23 jury instruction, and that he was prejudiced by counsel's failure. "When evidence presented
before the jury raises a question of whether the fruits of a police-initiated search or arrest were
illegally obtained, 'the jury shall be instructed that if it believes, or has a reasonable doubt, that the
evidence was obtained in violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.'" *Robinson v. State*, 377 S.W.3d 712, 719
(Tex.Crim.App. 2012) (quoting Tex. Code Crim. Proc. Ann. art. 38.23(a)). A defendant's right to
the submission of an instruction under article 38.23(a) "is limited to disputed issues of fact that are
material to his claim of a constitutional or statutory violation that would render evidence
inadmissible." *Madden v. State*, 242 S.W.3d 504, 509-10 (Tex.Crim.App. 2007). To be entitled to
a jury instruction under article 38.23(a), the defendant must meet three requirements: "(1) [t]he
evidence heard by the jury must raise an issue of fact; (2) [t]he evidence on that fact must be
affirmatively contested; and (3) [t]hat contested factual issue must be material to the lawfulness of
the challenged conduct in obtaining the evidence." *Id.* at 510. If there is no disputed issue of fact,
the legality of the challenged conduct is determined by the trial court alone as a matter of law. *Id.* If
undisputed facts are sufficient to support the lawfulness of the challenged conduct, then the disputed
fact issue is not material to the ultimate admissibility of the evidence and need not be submitted to
the jury. *Id.* The factual dispute must be necessary to determining the lawfulness of the challenged
conduct. *Id.* at 511. If the defendant successfully raises a factual dispute material to whether

evidence was illegally obtained, an article 38.23(a) instruction is mandatory and must be included in the jury charge. *Robinson*, 377 S.W.3d at 719.

Petitioner has not shown he was entitled to an article 38.23 instruction because he has not shown the evidence at trial established there was an issue of fact as to whether the PCP found in the vehicle was the result of an illegal search and seizure. The trial testimony and evidence did not reflect any factual disagreement about the validity of the stop of the vehicle, the request for and giving of consent to search, the extent of the consent to search, the development of probable cause as the result thereof, or any other circumstances of the search of the vehicle or petitioner's subsequent arrest. With regard to the consent to search, there was no dispute that the trooper requested consent to search the trunk, that petitioner gave consent and agreed to the search, or that it was necessary for the trooper to retrieve the key fob from the ignition inside the cabin of the car in order to open the trunk. Although defense counsel attempted to challenge the trooper's testimony regarding the potency level of the ether smell, there was no factual disagreement established and the testimony remained undisputed that there was the smell of ether in the cabin of the vehicle which provided the necessary probable cause. Consequently, the admissibility of the PCP evidence was merely a question of law determined by the trial court. Trial counsel's failure to request an instruction to which petitioner was not entitled is not ineffective assistance. *Cf. Hardin v. State*, 951 S.W.2d 208, 211 (Tex. App.-Houston [14th Dist] 1997, no pet.) (rejecting claim for ineffective assistance where trial counsel failed to request article 38.23 instruction when evidence established that he was not entitled to instruction and therefore it did not affect outcome of case).

### E. Representation on Appeal

Appellate counsel raised two issues on direct appeal: (1) trial court error in denying

petitioner's motion to suppress; and (2) ineffective assistance of trial counsel for failing to speak with co-defendant Harris prior to trial.  By his last ground, petitioner argues appellate counsel was deficient for failing to raise the ineffective assistance of trial counsel claims he asserts in this federal habeas petition as additional grounds of error on direct appeal.

Under Texas jurisprudence, a claim of ineffective assistance of counsel may be raised on direct appeal, assuming the right to such appeal otherwise exists.  *See Ex parte White*, 160 S.W.3d 46, 49 n. 1 (Tex.Crim.App. 2004).  All of petitioner's ineffective assistance of trial counsel claims raised in the instant federal habeas petition have been addressed above, and petitioner has not demonstrated he is or would have been entitled to relief on any of the claims.  Petitioner has not demonstrated appellate counsel's decision not to raise these additional claims was objectively unreasonable, or that there is a reasonable probability that, but for appellate counsel's failure to raise the above claims, he would have prevailed on appeal.  Moreover, "[c]laims of ineffective assistance of counsel are generally not successful on direct appeal and are more appropriately urged in a hearing on an application for a writ of habeas corpus."  *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex.Crim.App. 2011); *see also Ex parte Nailor*, 149 S.W.3d 125, 131 (Tex.Crim.App. 2004) (providing that unlike other claims rejected on direct appeal, claims of ineffective assistance of counsel rejected due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus); *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex.Crim.App. 1999) ("In the majority of instances, the record on direct appeal is simply undeveloped and cannot adequately reflect the failings of trial counsel" to resolve an ineffective assistance of counsel claim).  Appellate counsel was not deficient for failing to raise frivolous claims as grounds of error on direct appeal, nor was petitioner prejudiced by any failure to raise frivolous grounds.  Petitioner's claim of

ineffective assistance of appellate counsel is without merit and should be denied.

## V.
## FAILURE TO MEET AEDPA REVIEW STANDARD

The only claim petitioner raises which warrants particular discussion is trial counsel's failure to request a limiting instruction, both mid-trial and in the jury charge, restricting the jury's consideration of the audio recording and transcript of the interview between co-defendant Freeman and Detective Webb for the sole purpose of weighing Freeman's credibility. However, as discussed above, the lack of a limiting instruction did not permeate petitioner's trial with obvious unfairness, and the Court does not find a reasonable probability exists that the jury would have reached a different conclusion had there been a limiting instruction.

In addition, petitioner has failed to demonstrate any of the claims he raises in the instant federal habeas petition, including the failure to request a limiting instruction claim, have independent merit to the degree necessary to overcome the more arduous re-litigation bar of the AEDA. *See* 28 U.S.C. 2254(d). The state court considered all of petitioner's claims and denied relief. Petitioner has not shown the state court's decision regarding his claims was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court. Nor has petitioner demonstrated the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Consequently, petitioner is not entitled to, and in fact this Court is precluded from awarding, federal habeas corpus relief.

## VI.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States

District Judge that the Petition for a Writ of Habeas Corpus filed by petitioner DAVID HAROLD GREER, JR. should be DENIED.

## VII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _____ 30th _____ day of June 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin,* 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).